UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOSE ORTIZ, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) No. 3:22-cv-00290 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| WARDEN JASON CLENDENION, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Jose Ortiz, Jr. ("Petitioner"), an inmate of the Turney Industrial Complex in Tiptonville, Tennessee, filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2017 convictions and sentence for child abuse and aggravated sexual battery. (Doc. No. 1, "Petition".) The Respondent, Warden Jason Clendenion, filed the state court record (Doc. No. 10) and an answer urging dismissal (Doc. No. 11, "Answer"). The Petition is ripe for review, and the Court has jurisdiction pursuant to 28 U.S.C. § 2241(d). Having fully considered the record, the court finds that an evidentiary hearing is not needed, and the Petition may be resolved "as law and justice require." 28 U.S.C. § 2243; *Danforth v. Minnesota*, 552 U.S. 264, 278 (2008). For the following reasons, Petitioner is not entitled to habeas relief.

### I. PROCEDURAL HISTORY

In March 2018, a Montgomery County jury convicted Petitioner of child abuse and aggravated sexual battery for offenses against his eleven-year-old step-daughter. *State v. Jose Ortiz*, No. M2016-02457-CCA-R3-CD, 2018 WL 378402, at *1 (Tenn. Crim. App., Nashville, Aug. 6, 2018). On August 19, 2016, the trial court imposed concurrent sentences of eleven months and twenty-nine days and eight years, respectively. *Id*. at *7; (Doc. No. 10-6). On appeal to the

Tennessee Court of Criminal Appeals ("TCCA"), Petitioner challenged the sufficiency of the evidence sustaining his convictions. *Ortiz*, 2018 WL 378402, at *8-9. The TCCA affirmed on August 8, 2018, and the Tennessee Supreme Court denied review on November 14, 2018. *Id*.; (Doc. No. 10-13.) On November 6, 2019, with the assistance of counsel, Petitioner filed a petition for post-conviction relief, asserting (in support of a claim of ineffective assistance of counsel) that trial counsel failed to call the petitioner's wife as a trial witness, failed to adequately cross-examine the victim, and failed to seek the services of a DNA expert. *Ortiz v. State*, No. M202001642CCAR3PC, 2021 WL 5080514, at *1 (Tenn. Crim. App. Nov. 2, 2021). The post-conviction court held an evidentiary hearing, (Doc. Nos. 10-15 to 10-17), and subsequently denied relief. (Doc. No. 10-14 at 23-42). On appeal to the TCCA, Petitioner asserted that trial counsel was ineffective on grounds that he failed to call the petitioner's wife or to adequately cross-examine the victim. (Doc. No. 10-18.) On November 2, 2021, the TCCA affirmed, *Ortiz*, 2021 WL 5080514, at *4, and, on January 14, 2022, the Tennessee Supreme Court denied discretionary review. (Doc. No. 10-23.) On April 13, 2022, Petitioner timely submitted a federal habeas corpus petition (Doc. No. 1), whereupon Petitioner filed the Answer, and Petitioner filed a reply (Doc. No. 20, "Reply").

## II. STANDARD OF REVIEW

1. <u>Standards for Habeas Relief, Generally</u>

A federal habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Cassano v. Shoop*, 1 F.4th 458, 465 (6th Cir. 2021) (citing *Woodford v. Garceau*, 538 U.S. 202, 210 (2003)). AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford*, 538 U.S. at 206 (internal citations and quotation marks omitted). It

"reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring)). Under AEDPA, "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system," *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003), and state courts are considered "adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) (explaining that AEDPA "demands that state-court decisions be given the benefit of the doubt") (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citations omitted); 28 U.S.C. § 2254(a). AEDPA further restricts federal courts from providing relief on habeas claims that were previously "adjudicated on the merits" in the state courts unless the state-court adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cassano*, 1 F.4th at 466 (quoting 28 U.S.C. § 2254(d)); *Harrington*, 562 U.S. at 100.

"Under the 'contrary to' clause, a federal habeas court may grant the writ 'if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "Under the 'unreasonable application' clause, a federal habeas court

may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court." *Id*. (citing *Harrington*, 562 U.S. at 100; *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). An incorrect or erroneous application of clearly established federal law is not the same as an unreasonable one; "relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Carter v. Mitchell*, 829 F.3d 455, 468 (6th Cir. 2016) (quoting *White v. Woodall*, 572 U.S. 415, 427 (2014)); *Harrington*, 562 U.S. at 103. Likewise, a state court decision involves an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting 28 U.S.C. § 2254(e)(1)); *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El*, 537 U.S. at 340).

2. <u>Exhaustion and Procedural Default</u>

Before a federal court may review the merits of a Section 2254 habeas claim, the petitioner must have "exhausted the remedies available in the courts of the State" 28 U.S.C. § 2254(b)(1)(A); *Harrington*, 562 U.S. at 103. To properly exhaust a claim, a petitioner must "fairly present[ ]" it through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 277 (1971)) (explaining that a habeas petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim). In Tennessee, a petitioner is "deemed to have exhausted all

available state remedies for [a] claim" when it is presented to the Tennessee Court of Criminal Appeals ("TCCA"). *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). For each claim, a petitioner must then present to a federal court essentially the same facts and legal theory that were considered and rejected by the state courts. *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002) (citing *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). The burden is on a petitioner to demonstrate either compliance with the exhaustion requirement for each claim or that the available state procedure would be futile. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

The exhaustion requirement works together with the procedural-default doctrine, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *O'Sullivan*, 526 U.S. at 848. A petitioner procedurally defaults a claim when he fails to properly exhaust available remedies and can no longer do so because state procedural rules have closed off any avenue for state court review on the merits.[1] *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012)). Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition" of a claim. *Cadwell v. Mississippi*, 472 U.S. 320, 327 (1985).

To overcome a procedural default on a claim, a petitioner must show what the Court will call "default-cause," i.e., "good cause for the default and actual prejudice from the claimed error." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019) (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)); *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014) (citing *Coleman*, 501 U.S. at 754). A petitioner must establish default-cause by "show[ing] that some objective factor external

---

[1] Though not *properly* exhausted, such a claim can be considered exhausted—exhausted, that is, *by default*. Specifically, as mentioned below, such a claim is exhausted in the sense that (because of procedural default rather than proper exhaustion) there is no longer any avenue available to him to receive a remedy on the claim from state courts.

to the defense"—i.e., a factor that "cannot be fairly attributed to" the petitioner—"impeded counsel's efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065 (citations omitted). A factor is "external to the defense" if it "cannot fairly be attributed to" the prisoner. *Id*. For example, "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by officials' . . . made compliance impracticable, would constitute [default-]cause under this standard." *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488). Attorney error does not constitute default-cause unless it amounts to constitutionally ineffective assistance of counsel. *Edwards*, 529 U.S. at 451-52; *Benton*, 942 F.3d at 307-08. And importantly, a claim of ineffective assistance must be presented to the state courts as an independent claim before it may be used on federal habeas review to establish default-cause.[2] *Murray*, 477 U.S. at 489.

Ineffective assistance of *post-conviction* counsel may constitute default-cause under two circumstances. First, the complete abandonment (of the representation) by counsel during state post-conviction proceedings without notice to the petitioner may establish default-cause. *Maples v. Thomas*, 565 U.S. 266, 288-89 (2012). Second, ineffective assistance of post-conviction counsel may establish default-cause regarding substantial claims of ineffective assistance of trial counsel (but not other kinds of claims). *Martinez v. Ryan*, 566 U.S. 1, 17 (2012); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013); *see also Sutton*, 745 F.3d at 792 (holding that *Martinez* and *Trevino* apply in Tennessee).

If default-cause is established, a petitioner must also demonstrate actual prejudice. To do so, a petitioner must demonstrate that the constitutional error "worked to his *actual* and substantial

---

[2] If the ineffective-assistance claim is not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can be used as cause for the underlying defaulted claim only if the petitioner demonstrates cause and prejudice with respect to the ineffective-assistance claim. *Edwards*, 529 U.S. at 452-53.

disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). This means that "a petitioner must show not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (emphasis in original); *Frady*, 465 U.S. at 170. In the alternative, a court may bypass these requirements if a petitioner presents an "extraordinary case" whereby a constitutional violation "probably resulted" in the conviction of someone who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004); *Benton*, 942 F.3d at 307.

### III. ANALYSIS

Petitioner contends that: (1) the evidence at trial was insufficient to sustain a conviction; and (2) trial counsel was ineffective for (a) failing to call his wife as a trial witness, and (b) failing to properly cross-examine the victim. (Doc. No. 1.)

1. <u>Claim One: Sufficiency of the Evidence</u>

Petitioner first brings a sufficiency of the evidence claim based on two arguments: (a) the Petitioner's wife—the victim's mother—sought a U-visa[3] by getting her daughter to file false charges; and (b) there were inconsistencies between the victim's testimony and her other statements. As a threshold matter, although Petitioner raised sufficiency of evidence in his direct appeal, he did not make any argument concerning the alleged U-visa motivation. (*See* Doc. No. 10-8 at 28-29 (arguing that the evidence was insufficient because the victim's testimony was

---

[3] The Court takes judicial notice of the nature and purpose of a U-visa by reference to the following statement from the website of U.S. Citizenship and Immigration Services: "The U nonimmigrant status (U visa) is set aside for victims of certain crimes who have suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity." *Victims of Criminal Activity: U Nonimmigrant Status*, https://www.uscis.gov/humanitarian/victims-of-criminal-activity-u-nonimmigrant-status.

contradictory and otherwise flawed)); *Ortiz*, 2018 WL 378402, at *9 (considering sufficiency of the evidence based on the argument that "the victim's trial testimony was inconsistent with her statements" to others). And Petitioner entirely failed to raise sufficiency of the evidence on post-conviction appeal. (Doc. No. 10-14.) Thus, the TCCA never considered the U-visa issue in the context of sufficiency of the evidence.[4] *Ortiz*, 2018 WL 3738402, at *8-9. Petitioner, therefore, has not fully and fairly presented the U-visa sufficiency-of-the-evidence claim to the state courts. *See Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) ("[T]he doctrine of exhaustion requires that the same claim *under the same theory* be presented to the state courts before raising it in a federal habeas petition.") (quoting *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009)). Because a state procedural rule prohibits further consideration of the U-visa claim, *In re Hall*, 795 F. App'x 943, 944 (6th Cir. 2019), this part of Petitioner's claim is deemed exhausted (since there is no longer an "available" state remedy) but procedurally defaulted from federal habeas review. *Coleman*, 501 U.S. at 752-53; *Atkins*, 792 F.3d at 657. Thus, the Court may not entertain this argument unless Petitioner demonstrates default-cause and prejudice or a fundamental miscarriage of justice. *Benton*, 942 F.3d at 307; *Dretke*, 541 U.S. at 392. Here, Petitioner offers no compelling reason to excuse the procedural default, and the Court can discern none. Accordingly, Petitioner is not entitled to relief on the U-visa aspect of his insufficiency-of-the-evidence claim.

Petitioner did properly exhaust the sufficiency-of-the-evidence claim to the extent that it was grounded on the victim providing flawed and inconsistent testimony. For sufficiency-of-the-evidence challenges, habeas relief is warranted "only where the court finds, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have

---

[4] Petitioner raised his wife's "visa records" on post-conviction appeal as part of the claim that counsel was ineffective for failing to call his wife as a trial witness. (Doc. No. 20 at 2-3.) However, the post-conviction brief made no argument regarding the U-visa in the context of sufficiency of the evidence, and, thus, the TCCA did not consider that theory. *See Ortiz,* 2021 WL 5080514, at *1-4.

found the essential elements of the crime beyond a reasonable doubt." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (internal quotation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). The Court's analysis of an insufficient-evidence claim in the habeas context is doubly deferential: "First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker*, 541 F.3d at 656. This review imposes a "standard . . . so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). Here, the TCCA identified and applied the *Jackson* standard. *Ortiz*, 2018 WL 378402, at *8.

Petitioner was convicted of child abuse and aggravated sexual battery. In Tennessee, it is a Class A misdemeanor for any person to knowingly abuse a child under eighteen years of age so as to adversely affect the child's health and welfare. Tenn. Code Ann. § 39-15-401(b). "Aggravated sexual battery is unlawful sexual contact with a victim by the defendant" when the victim "is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). "'Sexual contact' includes the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6).

The TCCA found that:

> The proof adduced at trial, taken in the light most favorable to the State, revealed that upon returning home after taking the victim's mother to work, the victim's siblings went into the living room to watch television, and the victim went into the kitchen. As the victim was making a sandwich, the Appellant stood behind her and touched her front and back private areas. The victim took the sandwich to her room and later returned the empty plate to the kitchen. While she was walking back to her room, the Appellant pushed her into her mother's bedroom and onto the bed. He kissed and sucked on her neck, causing hickies, then he pulled down her sweatpants and underwear. He touched "[k]ind of both" the inside and outside of her front private part, "like almost there but like not really into there." Later that evening, the Appellant took the victim and her siblings to Walmart and bought makeup to conceal the marks on her neck. After the victim told her mother about the incident, the victim was examined by [Sue] Ross, a pediatric nurse at Our Kids. Ross took a swab from the victim's neck, which tested positive for the Appellant's saliva.

*Id*. at *9. This evidence (which Petitioner does not seriously challenge) establishes the essential elements of child abuse and aggravated sexual battery. Thus, it was not objectively unreasonable for the TCCA to conclude that the record was sufficient to sustain Petitioner's conviction. Petitioner's reliance on conflicting testimony does not alter this conclusion, because on habeas review the Court cannot re-weigh the evidence or make new credibility determinations. *See Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam) (explaining that jurors have "broad discretion in deciding what inferences to draw from the evidence," and when there are "a number of plausible ways to interpret the record," the state court's interpretation must not be disturbed by a habeas court as long as it is among those plausible interpretations); *Renico*, 559 U.S. at 778; *see also Waterford v. Washburn*, 455 F. Supp. 3d 579, 593 (M.D. Tenn. 2020) ("This Court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State.") (citing *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.

1978)). Here, it is plausible that the jury evaluated the testimonial inconsistencies and resolved any discrepancies in favor of the State. Accordingly, Petitioner is not entitled to relief on this claim.

2.   Ineffective Assistance of Counsel

   A.   *Legal Standards*

The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right of a person accused of a crime to the effective assistance of counsel. To succeed on a claim of constitutionally ineffective assistance of counsel, a petitioner "must show both deficient performance by counsel and prejudice." *Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) and citing *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984)); *see also Bell v. Cone*, 535 U.S. 685, 694-95 (2002). These dual requirements provide that, while reasonable attorneys may disagree on the appropriate strategy for defending a client, the constitution is violated only where counsel's performance is "so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc)); *see also Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004).

Trial counsel's performance is constitutionally deficient when it falls below an objective standard of reasonableness measured by prevailing professional norms. *Strickland*, 466 U.S. at 686-87; *Richardson v. Palmer*, 941 F.3d 838, 856 (6th Cir. 2019); *Bigelow*, 367 F.3d at 570. When evaluating performance, a court must be "highly deferential," consider the totality of evidence, and apply a "strong presumption" that trial counsel's conduct falls within a "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 695; *Harrington*, 562 U.S. at 104. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete

investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989) (quoting *Strickland*, 466 U.S. at 691). Thus, the prejudice element requires a petitioner to show that there is a "reasonable probability" that the result of the trial would have been different but for counsel's unprofessional errors. *Premo*, 562 U.S. at 122 (citing *Harrington*, 562 U.S. at 104-05); *Strickland*, 466 U.S. at 694; *Bigelow*, 367 F.3d at 570. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This does not require a showing that counsel's actions "more likely than not altered the outcome," but "the likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (quoting *Strickland*, 466 U.S. at 693, 697); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). In reaching this conclusion, a court considers whether the result of the trial was "fundamentally unfair or unreliable," *Bigelow*, 367 F.3d at 570 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)), or "infect[ed] . . . with error of constitutional dimensions." *Richardson*, 941 F.3d at 856 (quoting *Murray*, 477 U.S. at 494).

Additionally, due to the restrictive scope of review under AEDPA, *see Cassano*, 1 F.4th at 466 (quoting 28 U.S.C. § 2254(d)), "[t]he pivotal question" on federal habeas review is not simply whether the *Strickland* standard was satisfied, but rather "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. As the Supreme Court has emphasized:

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of [Section] 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.' A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (quoting *Williams*, 529 U.S. at 410) (emphasis in original); *see also Burt*, 571 U.S. at 15 (explaining that habeas review of ineffective assistance of counsel "gives both the state court and the defense attorney the benefit of the doubt") (quoting *Pinholster*, 563 U.S. at 190). Thus, a state court's determination that an ineffective assistance of counsel claim lacks merit under *Strickland* "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 652 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

    B.    *Claim 2(a): Trial counsel was constitutionally ineffective by failing to call Petitioner's wife to testify.*

Petitioner first claims that he received ineffective assistance when trial counsel failed to call his wife to testify during the trial. At the post-conviction hearing, Petitioner testified that he had wanted his wife confronted about concocting the criminal charges to help her avoid potential deportation. (Doc. No. 10-15.) Trial counsel testified that he did not call Petitioner's wife as an adverse witness because he "[couldn't] control what she says" and, in any event, "she didn't have any direct personal knowledge." (Doc. No. 10-15 at 28-29.) The TCCA considered this claim under *Strickland* and concluded that trial counsel made a reasonable strategic decision to not call Petitioner's wife as an adverse witness, and, in any event, that the Petitioner "failed to establish

what the [wife]'s testimony would have been because he did not call her at the evidentiary hearing." *Ortiz*, 2021 WL 5080514, at *1, 4.

This decision is not contrary to *Strickland* or an unreasonable application of *Strickland* to the facts. Petitioner did not call his wife to testify at the post-conviction hearing. As a result, the substance of her would-be trial testimony (regarding immigration status or otherwise) is Petitioner's mere speculation.[5] No Supreme Court decision holds that a state court must speculate or consider hearsay when deciding a claim of ineffective assistance of counsel. *Stewart v. Wolfenbarger*, 468 F.3d 338, 353 (6th Cir. 2006). Because Petitioner has "offered no evidence . . . to prove what the content of [his wife's] testimony would have been; *a fortiori*, he cannot show that he was prejudiced by its omission." *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007) (citing *Wolfenbarger*, 468 F.3d at 353); *see also Watts v. Nagy*, No. 18-1394, 2018 WL 4846700, at *4 (6th Cir. July 25, 2018) (citing *Clark* and *Wolfenbarger* and finding no prejudice resulting from trial counsel's failure to call several witnesses because the petitioner merely speculated and offered no evidence regarding how the witnesses would actually testify); *Moreland v. Bradshaw*, 635 F. Supp. 2d 680, 712 (S.D. Ohio 2009) (holding that a petitioner's failure to present evidence that an witness' "testimony would have benefitted" him is "fatal to any attempt to establish that but for counsel's alleged deficiencies [in calling the expert], the results of the proceedings would have been different"); *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his

---

[5] The TCCA's conclusion that Petitioner did not present any proof that the wife's testimony would have helped the defense "is itself a finding of fact, which is presumed to be correct under the AEDPA absent clear and convincing evidence to the contrary." *Stevenson v. Perry*, No. 116CV01052STAEGB, 2018 WL 6186808, at *12 (W.D. Tenn. Nov. 27, 2018) (quoting *Kestner v. Lafler*, 2011 WL 8004777, at *17 (W.D. Mich. Dec. 29, 2011) (citing 28 U.S.C. § 2254(e)(1)). Petitioner has not identified any such clear and convincing contrary evidence.

defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Thus, regardless of whether the decision to not call Petitioner's wife was sound trial strategy, the TCCA reasonably determined that Petitioner failed to establish prejudice. *See Strickland*, 466 U.S. at 697 ("[A] a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

In his Reply, Petitioner attempts to recast the U-visa issue as one of inadequate investigation. (Doc. No. 20 at 12.) This is of no moment, because Petitioner has not demonstrated prejudice. In any event, trial counsel testified that "the concept of the U-visa was our primary defense" that he argued "through the whole trial." (Doc. No. 10-15 at 29.) The record bears this out. The State opened the case by telling the jury that it anticipated "information from the defense that [Defendant's wife] sought a U[-v]isa after th[e] crime was reported." (Doc. No. 10-4 at 35.) In his opening statement, trial counsel expressly contended that "this case is about" a "plan to . . . stay in the United States" by "obtaining a U-visa as a victim of sexual assault." *Id*. at 37. During the cross-examination of Officer Brian Terry, trial counsel elicited testimony that Terry was asked to complete paperwork confirming that Petitioner's daughter was the alleged victim of a crime for purposes of a U-visa application. *Id*. at 57-58. During direct examination of the Defendant, trial counsel elicited testimony that Defendant and his wife fought; Defendant had made his wife "very, very upset" by threatening to not "get her a green card," thereby "le[aving] her here illegally"; Defendant's wife had filed for a U-visa; and that, due to pending divorce proceedings, obtaining the U-visa would be the "only way Defendant's wife would qualify for immigration status."[6] (Doc. No. 10-5 at 52-53, 62.) Finally, during closing arguments trial counsel argued that Defendant's wife and daughter were motivated to lie by the need to obtain a U-visa. *Id*. at 92, 98, 108. In particular, trial counsel asserted that "[t]he U[-v]isa is a real issue and it's a prominent issue, and it has been uncontroverted. Because [Defendant's wife] could have come in here and told you no . . . she could go back – be deported back to Mexico if she doesn't get that U-

---

[6] Defense counsel reasonably decided against calling Petitioner's wife as a witness because he "c[ouldn't] control what she says" and because a "Perry Mason moment"—whereby the wife would confess that "this is all just a ruse for a U-[v]isa"—was "extremely unlikely." (Doc. No. 10-15 at 28-29.)

visa. . . . she's got a vested interest in how the case gets worked out."[7] *Id*. at 103. Thus, the record indicates that trial counsel adequately investigated the U-visa defense and reasonably presented it at trial. It was thus not contrary to *Strickland's* performance prong for the state court to conclude that trial counsel was prepared and used the U-visa argument within the "wide range of reasonable professional assistance." Petitioner is therefore not entitled to relief on this claim.

> C. *Claim 2(b): Trial counsel was constitutionally ineffective by failing to properly cross-examine the victim.*

Petitioner also asserts that trial counsel failed to cross-examine the victim adequately "about her boyfriend as a potential provider of the hickey" or the "major changes in her story." (Doc. No. 1 at 8.) The TCCA affirmed the trial court's denial of this claim on both performance and prejudice grounds. *Ortiz*, 2021 WL 5080514, at *4. The TCCA concluded that Petitioner had not demonstrated "what additional beneficial evidence" trial counsel could have elicited during cross-examination, and it noted that Petitioner "acknowledged that he did not expect the victim to admit that the allegations [of abuse] were fabricated." *Id*. The TCCA also found that evidence regarding the victim's boyfriend would not have changed the outcome of the trial. *Id*.

This decision is neither contrary to *Strickland* nor an unreasonable application of *Strickland* to the facts. "Courts generally entrust cross-examination techniques, like other matters of trial strategy, to 'the professional discretion of counsel.'" *Withers v. Braman*, No. 2:15-CV-12314, 2019 WL 560256, at *4 (E.D. Mich. Feb. 12, 2019) (quoting *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002)). Therefore, "[i]mpeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id*. "Where . . . trial counsel conducts a thorough and meaningful cross-

---

[7] This led the state to spend time during rebuttal arguing that trial counsel was attempting to "turn[ ] this whole thing into a case about a U-visa" and that "this case is not about [Defendant's wife's] immigration status." (Doc. No. 10-5 at 109-10).

examination of a witness, counsel's failure to employ a trial strategy that, in hindsight, might have been more effective does not constitute unreasonable performance for purposes of an ineffective assistance of counsel claim." *Moss v. Olson*, 699 F. App'x 477, 487 (6th Cir. 2017) (citation omitted).

Here, the record indicates that trial counsel conducted a thorough and meaningful cross-examination of the victim. (Doc. No. 10-4 at 78-95.) Inter alia, trial counsel questioned the victim about: the origin of the hickey; "lying" to her mother about the attack; inconsistencies in her statements to law enforcement and medical providers; the timeline of events on the day of the attack; and potential motivation for reporting the attack, including the alleged threat of being sent back to Mexico. *Id*. The idea that trial counsel may have been more effective in his impeachment had he taken another course (e.g., enquired about the mother's desire for a U-visa, a subject about which the victim may have had no knowledge) is precisely the sort of second-guessing of a tactical judgment that *Strickland* counsels against. Though counsel arguably could have probed further in certain areas (e.g., whether the victim had a boyfriend), Petitioner did not show what useful evidence trial counsel could have obtained with additional cross-examination. *Ortiz*, 2021 WL 5080514, at *4. In light of an otherwise detailed and effective cross-examination of a minor, trial counsel's decision to not raise other subjects could reasonably be determined to fall "within the wide range of reasonable professional assistance."[8] *Strickland*, 466 U.S. at 689. Thus, the TCCA

---

[8] In his Reply, Petitioner also generally suggests that trial counsel was "ill-prepared" to cross-examine other witnesses. (Doc. No. 20 at 14-15.) This "conclusory and perfunctory" assertion is "insufficient to overcome the presumption of reasonable professional assistance and are insufficient to warrant habeas relief." *Avery v. Genovese*, No. 3:17-cv-255, 2020 WL 107100, at *6 (M.D. Tenn. Jan. 9, 2020) (quoting *Wogenstahl v. Mitchell*, 668 F.3d 307, 335-36, 338 (6th Cir. 2012)); *see also Jones v. Michigan*, No. 13-cv-11543, 2013 WL 3243017, at *2 (E.D. Mich. June 26, 2013) ("Conclusory allegations do not provide a basis for habeas relief.") (citing *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003)). Even if the Court were to consider Petitioner's bare assertion, it is of no avail because he has not established what evidence any other cross-examination strategy would have purportedly revealed. Thus, he has not demonstrated prejudice.

reasonably determined that Petitioner failed to establish deficient performance. Petitioner is not entitled to relief on this claim.

## IV. CONCLUSION

For the reasons set forth herein, Petitioner is not entitled to relief on his habeas claims. Accordingly, the Petition under Section 2254 will be denied, and this action will be dismissed with prejudice. Because jurists of reason could not disagree with the Court's resolution of Petitioner's claims, the Court will deny a certificate of appealability.

An appropriate order will enter.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE